Gary WASSERMAN, Plaintiff,

v.

TRANS WORLD AIRLINES,
INC., Defendant.

No. 77–0778–CV–W–1.

United States District Court,
W. D. Missouri, W. D.

March 14, 1980.

William H. Pickett, William H. Pickett, P. C., Kansas City, Mo., for plaintiff.

Karl F. Schmidt, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for defendant.

MEMORANDUM OPINION AND ORDER

I.

JOHN W. OLIVER, Chief Judge.

This cause was tried to the Court without a jury on November 9, 1979. Findings of fact and conclusions of law will be made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The Clerk of the Court will be directed to enter judgment for the defendant.

II.

*Findings of Fact*

We make the following findings of fact, all of which have been stipulated by the parties (references to stipulation exhibits are omitted):

1. Plaintiff is a citizen of the State of Missouri, residing in Kansas City, Missouri.

2. Defendant is a New York corporation, having its principal place of business in the State of New York.

3. Defendant Trans World Airlines, Inc. is an air carrier engaged in interstate commerce.

4. On August 10, 1976, plaintiff purchased a passenger ticket, numbered (015) 8808660921 on defendant's airline.

5. Plaintiff paid $208.00 for ticket numbered (015) 8808660921.

6. TWA Ticket No. (015) 8808660921 was a round trip ticket for transportation from Kansas City, Missouri to Newark, New Jersey to Kansas City, Missouri.

7. TWA Ticket No. (015) 8808660921 was issued in the name of Dr. G. Wasserman, reserving and confirming transportation on TWA Flight # 402 from Kansas City, Missouri to Newark, New Jersey on August 21, 1976.

8. TWA Ticket No. (015) 8808660921 also included a ticket reservation and conformation in plaintiff's name on TWA Flight # 247 from Newark, New Jersey to Kansas City, Missouri on August 24, 1976.

9. TWA Flight # 247 from Newark, New Jersey was scheduled to make one stop-over in St. Louis, Missouri on its scheduled flight to Kansas City, Missouri on August 24, 1976.

10. On August 24, 1976, TWA Flight # 247 was scheduled to depart Newark, New Jersey at 8:00 a. m.

11. TWA Flight # 247 from Newark, New Jersey was scheduled to arrive in Kansas City, Missouri at 10:45 a. m. on August 24, 1976.

12. Plaintiff knew that TWA Flight # 247 was to depart Newark, New Jersey at 8:00 a. m. on August 24, 1976.

13. Plaintiff arrived at the Newark, New Jersey airport at 7:50 a. m. on the morning of August 24, 1976.

14. Plaintiff was late arriving at the Newark Airport on August 24, 1976, because of a traffic jam and had decided that if he did not make Flight # 247 he would stay in New York another day and visit with his relatives.

15. When plaintiff arrived at the TWA ticket counter on August 24, 1976 in Newark, New Jersey, he was told by TWA personnel that there was not sufficient time to check-in at that location.

16. When plaintiff arrived at the TWA ticket counter at the Newark, New Jersey Airport on August 24, 1976, he was told by TWA personnel that TWA Flight # 247 was already boarding.

17. When plaintiff arrived at the TWA ticket counter at the Newark, New Jersey Airport, he was told to go straight to the boarding gate for TWA Flight # 247.

18. Sometime after 7:50 a. m. on August 24, 1976 at the Newark Airport, plaintiff began walking from the TWA ticket counter to the boarding gate for TWA Flight # 247.

19. While walking to the boarding gate for TWA Flight # 247, plaintiff was picked up by TWA personnel in a golf cart vehicle which further transported the plaintiff to the boarding gate for TWA Flight # 247.

20. When plaintiff presented himself at the boarding gate or ticket lift point for Flight # 247 on August 24, 1976, the TWA ticket agent boarded passengers on a first-come, first-served basis in the order in which they were standing in line at the boarding gate.

21. Two passengers in line ahead of plaintiff at the boarding gate or ticket lift point for TWA Flight # 247 were boarded ahead of plaintiff on that flight.

22. Defendant Trans World Airlines, Inc. did not permit plaintiff to board TWA Flight # 247 on August 24, 1976.

23. The aircraft scheduled for TWA Flight # 247 on August 24, 1976 had a capacity of 73 coach passengers.

24. The aircraft scheduled for TWA Flight # 247 on August 24, 1976 did not have capacity to carry any first class passengers.

25. When TWA Flight # 247 left Newark, New Jersey for Kansas City, Missouri the morning of August 24, 1976, there were 73 ticketed coach passengers on board.

26. On August 24, 1976, defendant offered plaintiff alternative transportation to plaintiff's destination in Kansas City, Missouri.

27. Plaintiff accepted and used the alternative transportation to Kansas City, Missouri provided by defendant on August 24, 1976.

28. Trans World Airlines, Inc. purchased Ticket No. (015) 124983681 in plaintiff's name on August 24, 1976.

29. TWA paid $25.50 for Ticket No. (015) 124983681.

30. Ticket No. (015) 124983681 reserved plaintiff transportation on New York Air Ways Flight # 900 on August 24, 1976.

31. New York Air Ways Flight # 900 was a helicopter flight from the Newark, New Jersey Airport to La Guardia Airport in New York, New York.

32. New York Air Ways Flight # 900 was scheduled to leave Newark, New Jersey Airport at 8:45 a. m. on August 24, 1976.

33. Plaintiff accepted Ticket No. (015) 124983681, arrived at the departure point 10 minutes before the flight left, and boarded New York Air Ways Flight # 900 at Newark, New Jersey Airport on August 24, 1976, bound for New York's La Guardia Airport.

34. Defendant TWA secured and plaintiff accepted alternative transportation for plaintiff at La Guardia Airport in New York on TWA Flight # 395 on August 24, 1976.

35. It was plaintiff's decision to accept or reject the alternative transportation which TWA offered him on Flight # 395.

36. TWA Flight # 395 on August 24, 1976 was a nonstop flight from New York's La Guardia Airport to Kansas City, Missouri.

37. Plaintiff used Ticket No. (015) 8808660921 to board TWA Flight # 395 on August 24, 1976.

38. Plaintiff boarded TWA Flight # 395 leaving New York's La Guardia Airport at 10:30 a. m. on August 24, 1976.

39. Plaintiff arrived in Kansas City, Missouri at 12:12 p. m. on August 24, 1976, on TWA Flight # 395.

40. Defendant did not offer or deny plaintiff denied boarding compensation.

41. The plane that plaintiff was on arrived in Kansas City, Missouri within two hours of his regularly scheduled arrival time.

42. Defendant Trans World Airlines, Inc. is regulated by the tariffs, orders and regulations promulgated by the Civil Aeronautics Board (hereinafter "CAB").

43. Local and joint passenger rules tariff No. PR–6 in effect on August 24, 1976 governs an airline's "Failure to Carry."

44. 41 Federal Regulations 16478 (CAB Order ERD–296), which governs the overbooking of flights, was in effect on August 24, 1976.

45. The TWA Passenger Sales and Services Manual in effect on August 24, 1976 governs denied boardings on a first-come, first-served basis.

46. 14 C.F.R. Part 250—Oversales, sections 250.4, 250.5, 250.6, and 250.7 were in effect on August 24, 1976.

47. The airplane on which plaintiff ultimately flew to Kansas City, Missouri (Flight # 395) was scheduled to arrive not later than two hours after the time at which the flight from which he was bumped (Flight # 247) was scheduled to arrive. [Although this fact was not stipulated, it is not in dispute. *See* Plaintiff's Tr. Exhibits 7 and 10].

### III.

#### *Conclusions of Law*

The parties stipulated in Standard Pretrial Order No. 2 that the following eight issues of law remained to be litigated at trial:

1. Whether the defendant participated in any fraud toward the plaintiff that he relied upon and was thereby damaged.

2. Whether the defendant discriminated against the plaintiff in violation of 49 U.S.C. § 1374(b).

3. Whether plaintiff, if entitled to any damages at all, is entitled only to actual damages for his actual damages or for other [than] actual damages.

4. Whether plaintiff, if entitled to any damages at all, is entitled to punitive damages in addition to any actual damages.

5. Whether, under the facts of this case, plaintiff has proven the necessary legal elements of the tort of misrepresentation and, if so, that he suffered damages as a result.

6. Is plaintiff barred from recovery for actual and punitive damages under the reasoning of *Rousseff v. Western Airlines, Inc.* [409 F.Supp. 1262 (C.D.Cal.1976)].

7. Has TWA proven the "good faith" defense referred to by the Circuit Court of Appeals for the District of Columbia and the Supreme Court in *Nader v. Allegheny Airlines*. [167 U.S.App.D.C. 350, 512 F.2d 527 (D.C.Cir.1975), *rev'd. on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)].

8. Whether, under the facts established at trial, TWA can be held to have violated 49 U.S.C. § 1374(b).

Two of the questions (Nos. 2 and 8) relate solely to plaintiff's federal claim as alleged in Count I of his complaint. Two questions (Nos. 1 and 5) relate to plaintiff's State

claim as alleged in Count II of his complaint.

One question (No. 6) concerns the legal impact of plaintiff's acceptance of alternative transportation pursuant to 14 C.F.R. § 250.6 (1976). The question presented is whether 14 C.F.R. § 250.7 (1976) bars plaintiff's right to recover under either plaintiff's federal claim as alleged in Count I or his State claim as alleged in Count II.

The remaining legal questions (Nos. 3, 4, and 7) relate to damages or other questions which we do not reach in light of our determination that plaintiff is not entitled to recover on either the federal or State claims alleged in Counts I and II.

Questions Nos. 2 and 8 raise plaintiff's federal claim that plaintiff is entitled to recover under 49 U.S.C. § 1374(b). Questions Nos. 1 and 5 present the question of whether, under State law, plaintiff is entitled to recover for fraud and misrepresentation. We find and conclude that both plaintiff's Section 1374(b) federal claim and his State tort claim are barred by plaintiff's acceptance of alternative transportation under 14 C.F.R. § 250.6 (1976) and other applicable regulations.[1]

Section 250.4 states that, subject to the exceptions of Section 250.6, "every carrier shall file tariffs providing compensation to a passenger holding confirmed reserved space" who appears at the right time and place but is nevertheless denied a seat. Section 250.6 provides that such a passenger on a domestic flight shall not be eligible for denied boarding compensation if he accepts alternative transportation to his destination offered by the carrier which is scheduled to arrive no later than two hours after the time that the flight from which he was excluded was scheduled to arrive.

Finally, Section 250.7 provides that acceptance of denied boarding compensation "shall constitute liquidated damages for all damages incurred by the passenger as a result of the carrier's failure to provide the passenger with confirmed reserved space."

Sections 250.6 and 250.7 are construed in *Rousseff v. Western Airlines, Inc.*, 409 F.Supp. 1262 (C.D.Cal.1976), cited by the parties in their stipulated question No. 6. That case involved a passenger who had been bumped at an intermediary stop from a through flight. The passenger, however,

---

1. The relevant sections of 14 C.F.R. (1976) are:
    § 250.4 Filing of denied boarding compensation tariffs.
    Subject to the exceptions provided in § 250.6, every carrier shall file tariffs providing compensation to a passenger holding confirmed reserved space who presents himself for carriage at the appropriate time and place, having complied fully with the carrier's requirements as to ticketing, check-in and reconfirmation procedures and being acceptable for transportation under the carrier's tariff, and the flight for which the passenger holds confirmed reserved space is unable to accommodate the passenger and departs without him.
    § 250.6 Exceptions to eligibility for denied boarding compensation.
    A passenger shall not be eligible for denied boarding compensation if:
    (a) The flight for which the passenger holds confirmed reserved space is unable to accommodate him because of: (1) Government requisition of space; or (2) substitution of equipment of lesser capacity when required by operational and/or safety reasons; or
    (b) The carrier arranges for comparable air transportation or for other transportation accepted (i. e., used) by the passenger, which, at the time either such arrangement is made, is

planned to arrive at the airport of the passenger's next stopover or, if none, at the airport of his destination earlier than, or not later than 2 hours after, the time the direct or connecting flight, on which confirmed reserved space is held, is planned to arrive in the case of interstate and overseas air transportation, or 4 hours after such time in the case of foreign air transportation; or
    (c) The passenger is accommodated on the flight for which he holds confirmed reserved space, but is offered accommodations or is seated in a section of the aircraft other than that specified in this ticket at no extra charge: *Provided*, That a passenger seated in a section for which a lower fare is charged shall be entitled to an appropriate refund.
    § 250.7 Denied boarding compensation as liquidated damages.
    The tariffs required by this part shall specify that the carrier will tender, on the day and place the denied boarding occurs, compensation in the amount specified above, which, if accepted by the passenger, shall constitute liquidated damages for all damages incurred by the passenger as a result of the carrier's failure to provide the passenger with confirmed reserved space.

accepted the carrier's offer of alternative transportation which was scheduled to arrive within two hours of the scheduled arrival of his original flight. The passenger sued defendant airline for alleged discriminatory treatment under Section 1374(b) and for the tort of either negligent or intentional infliction of emotional distress under applicable State law. Interpreting Sections 250.6 and 250.7, *Rousseff* held that:

    1. Plaintiff has no remedy at law, because he was provided with alternative transportation which would have gotten him to his destination within less than two hours from his originally scheduled time of arrival.

    2. Under 14 C.F.R., Part 250, specifically §§ 250.6 and 250.7, plaintiff's acceptance and use of the rerouted tickets provided by Western constituted liquid damages for all damages suffered by plaintiff, and plaintiff is therefore barred from this action.

409 F.Supp. at 1263.

We agree with *Rousseff*'s conclusion that plaintiff's acceptance of alternative transportation under Section 250.6 barred both his 49 U.S.C. § 1374(b) federal claim and his State tort claim. *Cf. Roman v. Delta Air Lines, Inc.*, 441 F.Supp. 1160 (N.D.Ill.1977) (passenger's acceptance of denied boarding compensation barred both her Section 1374(b) claim and her State common-law claims).

*Rousseff* was most recently followed in *Christensen v. Northwest Airlines, Inc.*, 455 F.Supp. 492 (D.Haw.1978), in which yet another bumped holder of a confirmed reservation accepted alternative transportation as provided in Section 250.6. *Christensen* held at 494 that:

    There is nothing in Part 250 [of 14 C.F.R.] which provides that acceptance of

alternate transportation which is scheduled to arrive within two hours of the originally scheduled arrival time (and therefore render him ineligible for compensation) would also constitute "liquidated damages for all damages incurred by the passenger" for the bumping. It appears, however, that such was the intent of 14 C.F.R. Part 250.

We agree with *Christensen*'s further holding that "where plaintiff accepts and uses the alternate transportation provided by defendant which is scheduled to arrive not later than two hours of the originally scheduled arrival time, he is entitled to no further compensation for any damages suffered because of the bumping. *See Rousseff v. Western Airlines, Inc.*, D.C.Cal., 409 F.Supp. 1262 (1976)." [2] 455 F.Supp. at 494.

With specific reference to the State fraud and misrepresentation claim, *Christensen* concluded at 494 that "[p]laintiff must therefore be deemed to have made a binding election so that common-law remedies are no longer available to her for damages resulting from the bump."

We find and conclude that plaintiff's federal claim under Section 1374(b) and his State claim were barred as a matter of law under Section 250.7 by plaintiff's acceptance of alternative transportation as provided in Section 250.6.

We note only in passing that *Nader v. Allegheny Airlines*, 445 F.Supp. 168 (D.D.C. 1978),[3] on which plaintiff attempted to support his proposed conclusion of law No. 1, is inapposite. That case concluded that a bumped holder of a confirmed reservation was entitled to recover on both federal and common-law claims where a plaintiff had *rejected* both denied boarding compensation

---

**2.** While plaintiff's federal claim in *Christensen* involved defendant's alleged failure to provide alternative boarding compensation, not an alleged violation of anti-discrimination provisions of 49 U.S.C. § 1374(b), its rationale applies equally to such a suit. This is made clear by *Christensen*'s reliance on *Rousseff* which did involve such a Section 1374(b) claim.

**3.** The full history of that litigation is reported as *Nader v. Allegheny Airlines, Inc.*, 365 F.Supp. 128 (D.D.C.1973), *rev'd. Nader v. Allegheny Airlines, Inc.*, 167 U.S.App.D.C. 350, 512 F.2d 527 (D.C.Cir.1975), *rev'd. Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), *Nader v. Allegheny Airlines*, 445 F.Supp. 168 (D.D.C.1978) (appeal now pending in the United States Court of Appeals, District of Columbia Circuit).

and alternative transportation, thus escaping the bar of Section 250.7. In this case it is stipulated that plaintiff *accepted* the alternative transportation under section 250.-6. That acceptance of transportation must be construed as equivalent to an acceptance of denied boarding compensation, and therefore plaintiff's federal and State claims are subject to the Section 250.7 bar.

It is therefore,

ORDERED that the Clerk of the Court enter judgment for defendant on Counts I and II.